CHARLES L. ORTMAN AND WILHELM BOEING V. JOSEPH E.
SHAW ET AL.

*Power to Transfer Title.*

A contract for the sale of lands and timber authorized the pur-
chaser to sell the timber, but it was farther agreed that the
title to it should remain in the original vendors until full
payment was made, and as soon as the purchaser effected a
sale the proceeds should be applied on his own purchase.
*Held* that the contract gave the purchaser power to transfer
title to his vendees.

Error to Saginaw.   Submitted Oct. 10.   Decided Oct. 23.

TROVER.   The facts are in the opinion.

*John J. Wheeler* for plaintiff in error.   A vendor's pos-
session and apparent control of property does not operate to
confer title upon a *bona fide* purchaser when the vendor had
none. *Couse v. Tregent,* 11 Mich., 65; *Ballard v. Burgett,*
40 N. Y., 314; *Barnard v. Campbell,* 55 N. Y., 456. *Bona
fide* purchasers and attaching creditors acquire only the title
of their vendor or debtor.   *Coggill v. H. & N. H. R. R.,*
3 Gray, 547.   The power to sell meant simply to make a
contract of sale.   *Bradeen v. Brooks,* 22 Me., 470.   Pur-
chasers should inquire into the authority of their vendor to
sell property to which he has no complete title. *Cowan v.
Adams,* 10 Me., 374; *Parsons v. Webb,* 8 Me., 38.

*Wisner & Draper* (on brief) for defendant in error.

GRAVES, J.   The plaintiffs in error sued in trover for
certain logs which one McCormick had cut under a written
contract between him and the plaintiffs and had thereafter
sold to defendants.   The cause hinged upon the way the
contract was required to be construed in relation to McCor-
mick's right to sell.

The plaintiffs claimed that he acquired no right except
that of a purchaser on condition, and that the condition

not having been performed, the title was not vested in him and hence could not be transferred by his act. But the court ruled that by force of the contract McCormick was able to transact the sale, and thereupon the action was decided against the plaintiffs.

The contract was entered into February 14, 1876, and it provided first that plaintiffs agreed to sell to McCormick for $4,400 the east half of the northeast quarter of section twenty-four in town fifteen north of range three west, Isabella county, Michigan, and also the pine, oak and ash timber growing, lying and being in and upon the northwest quarter of the northeast quarter; the southeast quarter of the northwest quarter; the southeast quarter of the southwest quarter; the southeast quarter of the southeast quarter of section twenty-five in township fifteen north of range three west, in the same county.

The instrument then proceeded as follows:

"Second party agrees to buy said land and timber, and hereby has bought said land and timber as above specified and agrees to pay for the same four thousand four hundred dollars, with interest from the date hereof, at seven per cent. per annum annually, to be secured by notes executed by said second party maturing and payable at the Second National Bank of East Saginaw, as follows: Eleven hundred dollars ($1,100) to the order of Chas. L. Ortman, maturing Sept. 1, 1876; eleven hundred dollars ($1,100) to the order of Wilhelm Boeing, maturing September 1st, 1876; eleven hundred dollars ($1,100) to the order of Chas. L. Ortman, maturing May 1st, 1877; eleven hundred dollars ($1,100) to the order of Wilhelm Boeing, maturing May 1st, 1877.

Second. Said second party is hereby permitted to enter and take possession of said timber above specified, and to cut all or so much of the timber thereon standing and being, as he may desire, and to sell, bank and remove the same, or any part thereof; but it is mutually understood and agreed that the title to said timber and all lumber and other products made therefrom, shall remain in first parties until full payment is made, and on such payment the title shall pass to and vest in the second party. As soon as second party effects a sale of logs or lumber cut from above described lands, the proceeds of such sale, to the extent and amount of above mentioned four promissory notes, to be surrendered

by second party to said first parties, and the amount so surrendered to be endorsed by said first parties on said promissory notes.

Third. The first parties hereby authorize the second party to collect, sue or recover for any trespass or damages done on above described land and timber, but at his own cost and expense. But such collection of trespass it is mutually understood and agreed to be applied and endorsed on above mentioned four promissory notes.

Fourth. Said first parties agree to convey the east half of the northeast quarter of section 24 in T. 15 N., R. 3 west, and the pine, ash and oak timber of the balance of above described land by a good and sufficient deed in the law free from all incumbrances, liens and levies."

Now the contract is not entirely plain, but we think the circuit judge took the proper view of it. The plaintiff's counsel admits that it authorized McCormick to bargain away the logs, but he contends that it withheld him from conveying the title to bargainees whilst any of the original consideration and interest should continue unpaid.

Whilst the concession thus made by counsel is obviously unavoidable, the qualification contended for does not appear to the court to harmonize with controlling stipulations or with the apparent and undoubted object and design of the parties in empowering McCormick to handle the logs in the character of seller.

True, it was "mutually understood and agreed that the title to the timber and all lumber and other products made therefrom" should remain in plaintiffs until full payment. But at the same time McCormick is given in express terms the power "to sell" and in case of "sale" is required expressly to apply the proceeds so far as necessary on the notes taken by the plaintiffs. Moreover, he is expressly authorized to sue for and collect all damages caused to the logs, and this provision is quite broad enough in its terms to enable him to sue the plaintiffs themselves in case of injury committed at their hands. Whether he could sue them or not is of course not a subject for consideration now. The scope of the language is, however, indicative of a purpose to clothe McCormick with great power over the timber, and it tends to favor the circuit judge's construction.

It is very obvious that the parties meant that the logs might be sold for the very purpose of getting money to pay the original purchase price and interest to the plaintiffs, and that they intended that McCormick should transact the business of selling thus contemplated.

Sales for full value were intended and they were meant and expected to be complete and to cover the entire interest.

The money obtained was not to be mere earnest or the price only of a nominal interest. It was to be the equivalent of the entire property and title.

It would be absurd to suppose it was contemplated as a necessary expedient in order to consummate and complete every sale of logs and every sale of their products negotiated by McCormick under the power to sell given him by the contract, that the plaintiffs should either actively concur in the sale or ratify it. No such course was provided for or contemplated. Still McCormick was to be allowed to sell. Buyers were to deal with him and with him alone, and he bound himself to apply the proceeds on his paper. The plaintiffs expressly stipulated for this duty. They accepted his agreement to pay them the proceeds of the sales they authorized him to make of the property.

Whether, as between McCormick and the plaintiffs, the title might be considered as remaining in the latter, it is not important to inquire. Perhaps it could be. But we think that under the provisions of the contract it was competent for McCormick by his act to transfer the title. Whether he had become vested with the title or not he was clothed with the power to sell the whole interest, and was sufficiently commissioned to be able to communicate the title to the buyer.

Such being the case the defendants were not guilty of unlawful conversion, and the judgment should be affirmed, with costs.

COOLEY, C. J., and CAMPBELL, J., concurred.

MARSTON, J., did not sit in this case.